The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning. Judge Thacker, Judge Wynn, and I are very pleased to welcome you to the Fourth Circuit. Our first case today is Jeffrey Gray v. Board of County Commissioners of Frederick County. Mr. Latimer. Good morning, Your Honor. Gregory Latimer on behalf of the appellants in this matter. The matter was tried before a jury in the U.S. District Court for the District of Maryland, at which time a verdict was rendered in favor of the defendants. We have assigned, in particular, three areas of error that precluded the plaintiffs in that case from receiving a fair trial. The first area, which is the jury instructions, but more importantly in this case, what we have put before this Court is that the verdict was against the clear weight of the evidence and the judge should have granted a new trial. And the reason that we say that that is the most important area is because the jury in this case rendered a verdict against the plaintiffs based upon a tasering that occurred 23 seconds after an individual had been tasered, fell to the ground, lay motionless, did not speak, did not move. And at that time, the officer tasered him again because, in his view, he still presented a threat because he didn't show his hands. And our position in that regard... Because his hands were concealed and he had been repeatedly noncompliant already. Wasn't it reasonable for the officer to assume he was continuing to be noncompliant? Well, in this... Well, first of all, addressing that point, I don't think that the law has gotten to the point where we have said that failure to comply without more is the right carte blanche to use force. I think that the Bostic case says that. The Supreme Court has said... That's not the question. The question in terms of our review of this is the actions of a reasonable officer. In fact, a person, I guess in theory, could be unconscious. But the question really is what are the perceptions of an officer under these circumstances and whether his actions are those of a reasonable officer under these circumstances. I agree. And that's where Judge Thacker's question is going, not in terms of the... This is a horrible set of facts. I mean, it's really terrible. But when you focus on her question, what she is saying is the reasonable officer who, if he has the initial belief that he's putting his hands in front of him, then he falls down, his hands are still in front of him. He's motionless, but his hands are still there. And he doesn't comply. And he's already been noncompliant in the process of it. Is there room for a jury to determine that a reasonable officer under these circumstances would think or could believe that there was a threat here? No. Because there has to be objective reasonableness. This man had fallen down and was on the ground for 23 seconds. We're not talking about a rapidly evolving situation where this officer is under immense pressure. We're talking about 23 seconds. 23 seconds this man lay. He didn't move. He didn't speak. He didn't try to get up. He didn't do anything. The officer, the only thing that the officer can relate to this gentleman even being alive was the fact that he coughed a couple of times. Other than that, he did nothing. There was backup on the way, and in fact, the time records indicate that there was backup already on the scene. Right, but this officer said that he was not aware. Officer Torres was not aware that the other officer was on the scene. Now, that was a matter for the jury to either accept or reject. I agree with you. He did say that. He did say that he wasn't aware that those officers were there. But he was aware that there was backup coming. There was, again, if we were talking about exigent circumstances, maybe we'd have a different perspective. Well, what about the fact there were two other people, two other defendants on the ground? How does that factor into the analysis in terms of why wasn't the – this is so different, for example, than the facts in the Myers case, which I know you're familiar with. Yes. In this case, there were three people involved in a fight at 5 o'clock in the morning when the officer responded to the scene. Two of them got on the ground. He didn't know that those two were going to stay on the ground, and he had someone who had – the third person, Mr. Gray, who had refused to show his hands. So why wasn't that a more volatile situation than what you're telling us today? The situation – the officer assesses it, and he made a determination that, in his view, he needed to take action before backup got there. That's a decision that he's made. We're not arguing about that. But what we're saying is that in that 23 seconds, nothing had happened. According to the officer, those other two individuals were compliant. They didn't do anything. He did not have to do anything. An analogy, Your Honor. If he had used his firearm and shot an individual who was failing to show his hands and that individual had fallen to the ground, and he told that individual, not knowing whether that individual was still alive or conscious or not, he told that individual to show his hands. That individual didn't show his hands. He walked over to that individual and then shot him in the back because that individual didn't show his hands. We would not have a question that that would be an inappropriate use of force. The situation doesn't change just because it's a taser. If an officer had punched a man in the jaw and the man fell down face first and the man did not move, the man lay motionless, the man didn't do anything, we would not have a question about the use of force if that officer then went over and kicked that man in the face because he didn't show his hands. We're having an issue here because it's a taser. And the taser is still a use of force. And just because the reasonable officer could just as easily take into account that he's not moving, he's falling face first, he hasn't spoken, he's unconscious. If you don't know whether he's unconscious or not and you take force against that individual, I don't believe there's any way that we as human beings could say that's an objectively reasonable use of force. And the jury heard, I presume, all of these arguments that you're making now and they rendered their verdict. So what's your standard of review now and how do you get beyond it? Well, I think that the reason, and that is why we say that the jury instructions were not properly formulated to give to this jury, when the jury instructions did not differentiate between the fact that there was two separate uses of force. And even if that initial use of force when he came upon the scene, that officer, even if that was reasonable, as this court has indicated, it doesn't matter when you're looking at the second use of force. If the threat has been alleviated, you have to take into account what the facts and circumstances are at the time the second use of force is taken. This case is no different. There was an initial use of force, which we're not debating about, even though we question. We're not debating that. The initial use of force when he comes upon the scene, he perceives there to be a threat. Okay. But that second use of force, when you've got a gentleman standing up arguing with you and your hands go into your pants, although I don't believe the law has evolved to this point where you are allowed to use force simply for noncompliance. But let's assume that that use of force was justifiable, objectively reasonable. There is nothing that puts that second use of force into that category, because once he's tased, there is nothing that the officer has identified, nothing that the appellees have identified in their arguments to this court, not one single fact that anybody could say that suggests a threat. Didn't the officer testify that he had seen people before apparently rendered unconscious who then got up again and resisted? What he said was, on questioning, cross-examination, was in response to a question, well, you've seen fighters who have been punched and they've fallen face first, and that usually indicates that they've been knocked out. And he said, I've seen people who've fallen face first and they were not unconscious. That's a different point. What we're saying is, here a man has been hit with 50,000 volts of electricity. A 50,000-volt shot for five seconds. This man has fallen. This man has not moved. We're not talking about for a second or two. We're talking 23 seconds, almost half a minute. And you are standing there and this man does nothing. You know that there's backup. There is nothing to indicate or suggest that he had to take police action at that time. There is nothing to indicate or to suggest that anything. He had moved location, if you listened to his testimony. He had moved his location just in case there was something that he had missed, and the man was armed because he did see him when he drove up. He did not identify a shiny object. He did not identify a bulge. He saw the man supposedly engaged in fighting with his friend. He did not identify anything that would suggest that he was armed before he fell. But just in case he was armed, because his hands were there, he said that he changed locations so that he wouldn't know where he was, so that if he was armed he would not have a shot at him. And we're not challenging that. Those are all reasonable things. He also said that he observed a bulge in Gray's pants where his hands were, and he could not tell whether the bulge was caused solely by his hands or by a concealed weapon. That's correct. And that was before he tased him the first time. That was before he tased him the first time, and that's why I said to your honors we're not going to quibble about the first tasing because before the hands go in he doesn't see a bulge. He sees a bulge when the hands go in, and he says he doesn't know what that is. But the point of the matter is he's not standing. He's not prone at that point after he stays. He's on the ground. He's not moving. And as the officer testified, those probes are still in his chest, and he still has the opportunity by simply pulling that trigger to send another 50,000 votes into this man who has not moved for 23 seconds. And so based upon all of the facts, the totality of the circumstances is what I'm saying, when you look at that there was nothing objectively reasonable about this. And then when you take into account we specifically asked the trial court to instruct the jury. But even that part you are referencing the trial judge's excessive force instruction was deficient. Instruction 23, which was the only instruction that he gave with respect to the excessive force, it was deficient because of two things. Number one, it did not adequately set forth the law, and number two, it did not distinguish between the fact that there were two uses of force. But you're not saying that 23 contained an incorrect statement of law, are you? I do not. And being under a plein air standard of review, how do we reach your point when there's nothing incorrect about 23 and you didn't object to it on that? Well, we did object to it. Where did you object to it? What we said was, and I think that we said it, but what we said was that 23 in and of itself was an innocuous instruction. We're not saying that 23 was wrong. What we did was we said that 23 was insufficient, and we gave the judge three instructions, in fact, that we believe would have cured the deficiency in 23. Where did you say the instruction was deficient? You've got some language on page 10 and 11 in your brief. But that language is dealing with the immunity. No, Your Honor, on pages 3 and 4 of our reply, we discuss 3, 4, and 5 of the reply brief. We fully go through exactly how we set forth that instruction 23 was deficient. We set forth the reasons why we believe that our instructions that we had proposed would have cured that problem. And you proposed your instructions on December 19th, and the court's jury charge wasn't until January 24th. So how could your instructions have been in response to the court's proposed jury charge when you submitted them a month before that conference even occurred? Well, we submitted them pursuant to the court's order. We submitted the instructions, and then we have a charge conference. And then when the judge presents us with what he proposed to give as instructions, and then we argue to the court. Right. So where is that? Where is that objection on the record? Joint appendix at 924. And there we say in this case we have evidence that an individual was on the ground and not moving and not speaking. And so the issue of a threat comes about, and I think it was clear. The force used must be clearly a reasonable objective in that regard. A person who is unable to comply, this would not encompass that individual, just the first sentence. So there is where we're talking about why we believe that jury instruction was deficient and what instruction should have been given in order to at least cure that, because clearly. But you were asking for some language that didn't track the facts of the case. You're saying there the following language should be added. It was clearly established at the time of the incident that an individual who poses no threat, and that was the issue, whether there was a threat, the fact that he still had his hands in his pants. So to have asked for an instruction that says there is no threat was really taking that issue away from the jury. Well, no, because if the jury concluded that there was no threat, then that instruction would be appropriate. If the jury concluded that there was a threat, then it would not. But we were asking the court, because I think that that's the law. If there is no threat, then you don't have the right to use force. Right, but you weren't couching it in terms of if. There on page 924, you asked the court to add to the instruction, it was also clearly established that tasing an individual who, excuse me, that at the time of the incident giving rise to this lawsuit, that tasing an individual who poses no threat constitutes excessive force. But what we had asked the court to give was it is excessive force for a police officer to strike a person who is not resisting, who is not attempting to flee, and who does not pose an immediate threat to the safety of the officer or others. That's what we asked the court to give. You're also talking about jury instruction number 30 there. According to page 923, that's the jury instruction you're talking about. Where the language we were asking the court to add that language since he was not willing to give the instructions that we posed. We were asking him to at least add that language. You're right. So what we were, we asked the court to give the instruction that we thought should have been given. Right, but that's not the same as saying that number 23 is incorrect. And see, when you have a plain error standard here, you've got to show that something, that there was a substantial and injurious effect on your client due to a failure to properly instruct the jury. I think that if you give an instruction that is a correct statement of the law, but it does not sufficiently address the issues in the case, that would be the same. I think, as Judge Winn noted in a concurring opinion in Noel V. Artson, that so long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous. This simple inquiry is the heart of our review on an instruction appeal. And so when you look at what Judge Winn said in Noel V. Artson, the point here is that it did mislead the jury. It did mislead them because it did not articulate and set forth before that jury clearly that we're talking about two separate incidences, two uses of force, and even if force is justified at the time of the initial use of force, it could not be justified even seconds later if that force... But what you did in this case was really remarkable in the first instance to get this case beyond a summary judgment and actually before a jury. Many plaintiff's lawyers just start salivating if they can do that. And so you got it before the jury, but the unfortunate thing is when the jury was presented with this divergent set of facts, and everything you say is very reasonable. They very well could have gone that way, but they chose to go the other way for whatever reason. It may have been the officer's credibility. It may have been any number of things. But what we are now called upon is to look at the law at this. And that's just what happens in a trial like this. I mean, as I said, the trial didn't... our court didn't do this thing pre-trial. In these cases, they never get before the jury because they lost them. Summary judgment or the issues aren't there, the evidence is all one way. You got this thing to the jury. That's a powerful thing. The problem is once it gets to the jury there, then you don't know what a jury will come up with if you've given them actually two choices. So to prevail here, you now have to say, there's nothing here to support that other side. But you do have him with his hands in his pants. And even though he's down on the ground, it's a very bad set of facts. The question is, could the jury, could a reasonable jury determine that under these circumstances there's an officer in this position? The reason to believe the threat was still there. I don't believe that a reasonable jury that had been correctly charged could have because you have to, and I don't minimize the fact that these cases don't routinely get to juries. I don't minimize that, and I agree with the court that this is not the norm. But in this case, the fact that we're there should not be the goal. The fact that we receive a level playing field once we get there is what we're asking for. And if we had a level playing field, if we have the law is there. We're not asking you to make new law. We're simply asking this court to apply the law that is there, which is you cannot use force if that threat is eliminated. And if somebody who's on the ground, not moving, speechless, motionless, doesn't do anything to call into question a threat, then you don't get to use force just to see. And I think the analogy is provided with respect. I don't want to interrupt you, sir, but I just want to make sure you know you're using your rebuttal. I do. And unless there's another question, I'll stop at this point. Okay, sir. Thank you. Ms. Lee. Sandra Lee, representing FLE. Your Honors, you've raised a number of relevant questions. The issue in this matter, of course, on the excessive force claim of plaintiff, is whether the use of force was reasonable under the circumstances. In order to determine whether the use of force was reasonable, in this case the use of force according to the second amended complaint and plaintiff's argument were the two uses of the taser. The determination is whether the nature and quality of the intrusion on the decedent's Fourth Amendment interests are weighed against the countervailing governmental interests, indicate that the use of force was unreasonable. In order to establish that use of force was unreasonable, plaintiff had the burden of showing that plaintiff had the burden of proof. Well, isn't the bottom line of your case this was a jury question? Of course. Your Honor, there were disputes of fact throughout the trial. Okay, and Mr. Latimer has, I mean, he makes a very compelling point when he says, somebody lying on the ground for 23 seconds. I mean, that's an eternity at 5 in the morning. So it seems to me that you frame your jury question on the entire scene rather than this 20-second interval, 23-second interval. And, you know, really I don't know that there's that much more that you're saying other than the fact that it's a jury question. Is there, except for the jury instruction? Your Honor, the jury, the issue that has been presented by plaintiff is whether there was sufficient evidence for the jury to render the verdict that it did. And in particular, with regard to the second tasing, counsel has argued before this court, as he argued at trial, that the second tasing was not, second use of the taser was not reasonable because the scene was on the ground and was not moving. Your Honors, this was a horrible, tragic result. Is there any indication that there was a threat to the officer when he first arrived? You've got two individuals apparently fighting. He's called because they're fighting. I take it no one has said anything about a gun, nor a knife, nor a weapon or anything of that sort. It is correct that there was no report of a weapon. What the officer knew when he arrived at the scene was that there were 911 calls for a fight among two or three males. When he arrived, he observed two males, the decedent, Jeffrey Gray, and one of the trial witnesses, Mr. Duvall, what he called actively fighting. But no indication that either one of them, you would think if they're fighting and you had a gun on you, you probably would bring that gun out and that would end that fight or at least it would cause the person you're fighting to not do anything. But none of that happened. None of that happened. One might indeed speculate that... It doesn't all kind of look, when you look at it, and I'm getting my mind around the whole business of the reasonable officer, but it is a situation that is created by the presence of the officer that he then feels a threat. The officer was responding to a call for service. It was his job to respond to the call for service. When he observed the individuals fighting, it was his job to secure the safety of those individuals and of the people... or from whom. What was he securing? If there are individuals who seem to be fighting amongst themselves, and they're not fighting their neighbors, I hadn't heard anybody say they were threatened by it or nobody else, they're just fighting among themselves, what is he securing? In your example, Your Honor, you posit that had one of the individuals been carrying a weapon, that individual might have pulled it out and used it. Clearly, if one of the individuals who was fighting was armed, was carrying a weapon, and had not yet used it, if the fight was to continue with the officer just standing back and watching, or using only the minimal level of force of the verbal commands, which he did use... I'm trying to understand in terms of carrying a weapon, and I understand people can carry them up front, but normally it would seem to me that someone who's in a fight, if you've got a weapon in your pants, I mean, it seems like it ought to be in a hosta or something. I mean, it can't just be sitting inside of your pants while you're fighting, or would it? Had you, Your Honor, been on the jury, you might have presented that belief. But I want to know the evidence in terms of... because there seems to be some indication that people have guns in front of them. I mean, we can kind of use common sense, yeah, you can carry a gun is a good place to put it. But is it reasonable for a person who's involved in some type of a serious fight to have a gun in front of them the whole time they're fighting? I'm trying to picture this. Now, is he wearing those kind of pants that the young guys all wear that's halfway down his whatever there? I don't know. I mean, those seem to be salient facts to me, at least when I'm thinking about it, and I'm not saying it's not a jury question. I don't know if it was presented in this light. But all of those things come together when you're thinking about, well, the officer is threatened, and if he's in this kind of a neighborhood or he's been here in this situation, he knows this person could be having a gun. But if the nature of it is an active fight where they're going after it, I don't know how they're fighting. That doesn't seem to be described. It would be relevant to me how they're fighting. They're pulling on each other and falling on the ground, and he's got a gun up front of him? And, I mean, I'm trying to figure that one out. It makes sense if you walk up on someone and they're just standing there and he puts his hand down in front of me, he's holding it. But someone who's been fighting, he's going to have a gun? Judge Wynn, if I might address the facts and circumstances before the officer at each of the officer's actions. When he arrived, he observed men fighting. That is a crime. As the officer testified, he observed the crimes of disorderly conduct, which, while a minor crime, does warrant prosecution. Well, I'm talking about the fact he has a duty to do something. He sees something wrong and he's going to take an action. What I'm trying to go to is a question of the reasonable threat that arises because he seems to focus on the fact he's got those hands in front of him, and that would indicate a threat because he could have a gun. I mean, if he's got his hands in front of him and nothing's there, there's no threat. I mean, you can put your hands in front of you, there's not a threat for you, I wouldn't think. But he's got to have something or some belief something is there. Your Officer, what the jury heard on that subject was that after the officer had arrived and given the commands to show hands and get down on the ground, the two of the individuals, one individual complied, that's Mr. Kahiga. Two of the individuals cursed him, said they were not doing anything. The officer then deployed his taser, meaning he pulled it out, as he explained. That's deployed, a taser means. And said, again, gave the commands, lie down and show me your hands, get down on the ground and show me your hands, or you'll be tased. One of the individuals, Mr. Duval, got down on the ground and showed his hands. The other individual, and this was the threat that the officer testified he perceived, the other individual, Mr. Gray, turned his back on the officer and his hands at that point had been out of his waistband, put his hands into the waistband of his pants. I have not observed the pants, but apparently they were of the variety that had a loose enough waistband that the hands could go into the waistband. It's not in evidence, but the officer was not sure that if it was in his pockets. And he would not take his hands out. And he would not take his hands out. Tell me this, had he taken them out, would that have been a cause to then shoot him? Because you don't know who he's pulling out. It seems like that's really when the threat occurs. The threat is not while his hands are in his pants. It's when it comes out of his pants. I respect that. So he's in a lose-lose situation. When he turns around, puts his hands in his pants, even if he pulls those, even more so, he pulls that hand out of that pants at that time, that would really seem to be strong evidence there's a potential threat because he can't see that. Those were not the circumstances that faced the officer. But under these circumstances, if we accept where this is going, these facts indicate that once he turned around and put his hands, I'm thinking of any, because once we write this kind of thing, we're going to have to zero in on that fact that his hands is maybe concealed in a spot. It doesn't necessarily have to be in front. It could be in a coat pocket. It could be in the side. And you don't know what's in there. And as long as it's in there, probably there's not a threat as long as it's there because he's turned around with it down. The problem occurs if he pulls it out. It would seem that's a threat. But as long as he's turned around with his back turned that way, he's simply disobeying the orders and not agreeing. But where's the threat? I point out, Your Honor, that the taser, when it was used, struck Mr. Torres in the chest. So he had turned toward the officer before the officer used the taser. For matters of this sort regarding how fast or whether a weapon can be used from within the pants, Your Honor. Did he take his hands out of his pants? He did not. So was there a threat as long as his hands were in the pants? In order for him to use a gun, he had to put his hands down there and then take the gun and pull it up in his pants. A threat would happen when he would take it out. Judge Wynn, I respectfully disagree that there was no threat until he removed his hands from his pants. Besides which, first the expert testimony in this case, defense expert Thomas was a use of force expert qualified as an expert who testified that when a person puts his hands in his pants, it is a threat. It constitutes a threat. And what makes it a threat? Because he may use a weapon. Inside his pants. Absolutely. While his hands are down inside his pants. Absolutely. And that's a common occurrence. Someone puts their hands down in, do not pull them out, but they shoot through their pants, I guess is what you're saying. Your Honor, the question is not whether it is a common occurrence, the question is whether it poses a threat. Whether it poses a threat. Yes. And the expert testimony, which the jury was entitled to believe, was that the putting of the placement of the hands in the pants, the officer had been taught. In and of itself is a threat. Well, let me move to the next. No, I want to understand that fact. I want to understand this fact of the hands in the pants. Because I don't know where this goes. I understand the totality of the circumstance, what's going on. But it was zero in that the threat here is the hands in the pants. And your expert says the mere fact, is that what he's saying? The mere fact, hands in pants, is a threat. Nothing more. Yes, Your Honor. Have you read testimony from police officers who testify about how fast a weapon can be used? It is a matter of a second or less for a hand to come out of the pants with a hand on the trigger. Are you quoting the record now, or is this you? No, Your Honor. This is not in this case. Why don't you stick to the record then, if you would. I certainly will, Judge Keenan. Does it matter whether or not he has a taser or whether he has a gun, the officer? Would he have been equally justified to have shot him with a gun? Under these circumstances. First, of course, I must say, he did not do so. Oh, I understand that. Second. But if we write it in this way, and because the standard is reasonable officer, and it seems that it's not the level of force, it's the threat that he's having at times. So does it matter if he pulled out his gun and had it on him and shot him for having his hands in his pants? Not for taking them out, just having his hands in his pants. And you say an expert, so that's enough. That is a threat of, according to the testimony that the jury heard, the officer was presented with a threat of deadly physical force. So you're saying that was justified shooting him. And under the law, a threat of serious physical injury or deadly force or death does justify the use of deadly force. Deadly force was not used in this case. The officer had no reason to believe that the force that he was using would culminate in the tragic death of Mr. Gray. Moreover, I point out that there was evidence that there was no causal connection between the use of the taser and the death of Mr. Gray, and that the jury found, as a matter of fact, that the officer's acts did not cause the death of Mr. Gray. We may or may not agree with the jury, but that was the jury's finding of fact. And it was supported by the medical examiner's testimony, expert testimony, which is required for matters like this that are beyond the ken of the average lay juror, that there was a temporal connection, which is merely repeating the obvious, that obviously the man died after he had the taser used against him, but that there was not any evidence of a causal connection between the use of the taser and Mr. Gray's tragic death. Your Honors, the... Why are they saying he died? I beg your pardon? What was the reason why he died? What was the evidence that... Alcohol intoxication and restraint. Oh, wait a minute, there was something else. Then the tasering... They're saying there was nothing about the fact that the lodging of one of the probes near his heart caused cardiac arrhythmia, nothing at all in this record? There is nothing in the medical examiner's testimony, expert testimony. He was the only medical expert who testified at trial that supports a conclusion that the tasering, the use of the taser near the heart resulted in, caused the death of Mr. Gray. Other cases, in other matters, there has been... The official cause of death was listed as undetermined. Is that right? Yes, Your Honor. Yes, Mr. Becker, that is correct. So... That's different. I don't know where we go with that last part. I find it hard to believe it's not a cause. I'm not saying the cause, but it could be a cause. And that's really all you need to connect in terms of approximate cause of it. But the question here deals with this excessive force. And there is some indication that the appellant didn't object, yet he argued strenuously he objected to this instruction and points, to the record, these points. And how do you respond to that insofar as what the standard review should be here? If you read the, as we argued in our brief, Your Honor, if you read the charging conference, there was no objection made to instruction 23, which was the excessive force instruction, nor was there any request that it be supplemented at that time. And was that actually instruction 24 during the... It was, yes, Your Honor, because jury instruction 8, I believe, regarded interrogatories and there had not been any interrogatories presented, so there was proposed jury instruction 8 was removed. Thus, the discussion that counsel referred to in jury instruction, regarded jury instruction 30, which was the qualified immunity instruction, I'm sorry, proposed instruction 30, which turned out to be instruction 29, which was given to the jury. The issue with regard to qualified immunity, of course, was whether it was clearly established that the use of force was unconstitutional. Your Honor, the jury's verdict was not irreconcilably inconsistent in this case. The jury found that there was a use of force, the tasering, that it was objectively reasonable. The jury was instructed properly in jury instruction 23 that the standard was whether a reasonable officer could have believed that the use of force was necessary because of the Graham standards of whether a crime had been committed and how serious the crime was. In this case, Judge Wynn has pointed out that the only crime was assault with hands and no use of weapon.  And whether there was a threat. That the officer's testimony, along with the testimony of the defendant's expert, Mr. Thomas, was accepted by the jury that there was a threat. That the officer's use of force and assault of Mr. Gray was a privileged use of force. That he was entitled to the defense of defending himself or others. The jury's verdict was actually completely consistent in that it found a use of force and found that the use of force was privileged with regard to the state claims and reasonable with regard to the federal 1983 claim. Your Honor, the case cited by both parties, Noel V. Artson, I believe is dispositive as to the issue whether the jury was required to receive instructions marshaling the evidence and commenting on the evidence. It was not. It was properly instructed. The discretion of the district court was properly exercised. Did the deputy call the EMS in between the tasings? Yes, Your Honor. In the 23 seconds between the... Why did he call in between the tasings? It is standard operating procedure, police procedure in every jurisdiction in which I've practiced that the use of a taser or the other use of force, but specifically the use of taser, is grounds to call for medical response. So what happened in the 23... Absolutely. Once you actually use it, you then call the EMS. Yes. Because a taser can be a lethal weapon. No, Your Honor. I respectfully submit that that is not the reason that EMS is called. It is clearly a disruptive use of force on an individual. An individual, as this court may have encountered in other cases, an individual falls and may hurt himself. So in that 23 seconds, between the beginning of the first tasering, the first 5 seconds went on during which the first taser was used. So now we're down to, what's 23? 18 seconds. When he fell, did he fall, he fell first? He fell on the front, Your Honor. And he's down facing, at that time, the ground? Yes, Your Honor. And his hands are still down inside of his pants? Your Honor, the officer was not able to testify, stated that his hands were beneath him. Because his elbows were up, it might be reasonable to conclude that his hands had left his waist. But he's not moving. He hasn't made it, you know, we talked about this. He said he wasn't pulling the hands out while he was standing, but now he's down on the ground, and there is a threat that he's going to be able to pull out his face down to the ground, a gun, turn around, and shoot him? Your Honor, he would not have to turn around. He had fallen to the ground, his hands were beneath him. It was not clear, the officer could not tell whether his hands were still in his waistband, where, by the way, he had also seen a bulge, which he did not know whether it was a weapon or not. And if he was holding a weapon, he certainly could have fired at the officer. And the officer's response of moving from where he had originally been and calling EMS were both responses that he was trained to do after the use of a taser. Did he move to the side or move behind him? He moved to the side. He moved in an arc so that he would not be in the same location relative to Mr. Gray. Respectfully, Your Honor, that is completely consistent with the officer's testified subjective concern that the weapon would be used against him. Thank you. Thank you, Your Honors. Thank you, Ms. Lee. Mr. Latimer. I think just based upon what they've just said, there couldn't have been a threat to this officer. As Judge Wynn has talked about, his hands, according to the officer, are in his pants. There's no threat then. The expert didn't testify that the threat arises when your hands go into your waistband. What the expert testified was that a weapon ---- Was there anything about the jury instructions in this case that would have prevented you from arguing to the jury what you're arguing to us now? We were not ---- I mean, in all candor, we were not prevented by the trial court in our arguments. The trial court did not ---- Did you argue that to the jury, what we just discussed? In other words, the threat does not arise from being hands in the pants, but it arises by the possibility or the chance that he could be pulling out a gun and using it. Was that the nature of your argument, that there was no threat because his hands actually stayed in his pants the whole time? And more so when he fell down face forward on the ground, that threat, if it had existed standing up, had to be diminished because he was down on the ground this time. Did you argue that? I believe we did. I believe we did. And the other side argued differently. So therein is where Judge Thacker is going is, that's a jury question. And if the jury chooses not to believe one or the other, we are a court of law here, so what makes us be able to pick and choose which facts we think are more reasonable? Well, I don't think that I'm asking ---- And I must say, it does sound quite reasonable, that it's hard to believe there's a threat in this officer, but it's not beyond the province of evidence that a jury could come to that conclusion, is it? Well, I do. I do. It is. Because you cannot just say that something is a threat because somebody says it's a threat. There has to be some objective reasonableness. And what we're saying is no reasonable jury could have ---- No reasonable jury that had been properly charged could have concluded that that was a threat. What is the threat? We have asked this question repeatedly in our papers. We have put the gauntlet to them to tell this court, what is the threat? The only threat that the officer says was that he didn't move his hand. But the threat is not in your pants. The threat is what you bring out your pants. You don't ---- The officer had moved. He testified. He had moved. Therefore, the officer who was standing in front of him and tased him was no longer standing in front of him and tased him. So this guy would have had to pull a weapon, turn, find the officer, and then use this weapon supposedly that he has, while he has two pens in him that are capable of sending 50,000 votes, and the officer is holding the trigger to that. Officers are arriving on the scene. The officer had no need to take immediate action. There was no threat. And we go back to the jury. I mean, you know, I think that the trial judge had it right the first time when he said that the jury's decision wasn't really a decision at all. I mean, we've got a verdict for him that comes back. You're supposed to reach a unanimous verdict, and everybody, and every question has written into it a consensus. And was the jury polled? The jury was polled, and they said that was our verdict. Yes, we reached a consensus. Well, what does consensus mean? They argue that, well, Webster's Dictionary says that a consensus is a synonym of unanimity. However, the jury wasn't told that. The jury wasn't given a dictionary. The jury was told. Did you ask the court for further clarification of that? The court told us it was declaring a mistrial. We did not have an opportunity. We assume that when the court told us it was going to declare a mistrial because the jury's verdict did not, they had not reached a verdict, that that was what was going to happen. We were shocked. We were totally shocked when the judge accepted that verdict and excused the jury. The judge had told us prior to bringing that jury in to have them read that verdict that he was going to declare a mistrial. So we don't get the opportunity to do that. So when you talk about the jury's verdict, I mean, that is a major issue here. What is a consensus? The jury wasn't told what a consensus was. Yes, we all expect that juries follow the instructions that they are given. That is what we're taught from day one. You're a litigator. That is what you believe. But when a jury comes back and every question has written consensus, consensus, we could not reach a consensus, how then does that mean that they have followed the instructions? It doesn't. They didn't. And when you say it's not irreconcilable, the jury indicated in this case that there was an assault and battery, but then there was no excessive force. That's not consistent. That cannot be harmonized. No way can that be harmonized. And when you have all of these things which come into account. Okay, Mr. Latimer, I hate to interrupt you again, but that's the red light. Could you please just take one minute and wrap it up? I do. And I submit to you that there was no threat for the officer to use, significant threat that justified the officer using force after the first tasing. We submit to you that the jury instructions did not adequately set forth the law. And we submit to you that this verdict, based upon what the jury said was a consensus, was irreconcilable with what they issued. And for that reason, the trial court erred when it did not grant a new trial. And so we would ask that a new trial be granted in this case. Thank you, Your Honors. Thank you. The court will come down to Greek Council, and then we'll proceed to hear our next case. Thank you.
judges: Barbara Milano Keenan, James A. Wynn Jr., Stephanie D. Thacker